IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SCOTT LEWIS RENDELMAN, #332884        *
       Plaintiff,
    v.                                    *     CIVIL ACTION NO. JFM-07-1643

DOC CAPTAIN SCOTT                     *
JOHN DOE, MARYLAND STATE
  TROOPER                             *
In their individual and official capacities
       Defendants.                   *
                      *****

**MEMORANDUM**

      Plaintiff, presently serving a state sentence at the Maryland Correctional Institution in Hagerstown, filed a civil rights complaint challenging the August 17, 2006, collection of a DNA specimen from him by a Maryland State Trooper under Division of Correction Directive ("DCD") 20-9, which he claims allows for the collection of the sample under threat of force. Paper No. 1. Plaintiff states that he involuntarily submitted to the collection. He further complains that neither Captain Scott, nor anyone else, took action to protect him from "the illegal threat or involuntary collection." Plaintiff seeks the return of the DNA sample, destruction of all records relating to the DNA analysis, and nominal and punitive damages. Because he appears to be indigent, plaintiff's motion to proceed *in forma pauperis* shall be granted pursuant to 28 U.S.C. § 1915(a).

      Under Maryland's DNA Collection Act, Md. Code Ann., Public Safety, § 2-501, *et seq.*, every individual convicted in Maryland of a qualifying offense is required to provide the Maryland State Police a DNA sample.[1] Plaintiff falls into the category of inmates from whom a DNA sample is to be taken for processing and storage in a statewide DNA data base system.[2] *See* DCD 20-9 at

---

    [1]    The Maryland DNA Collection Act first appeared in the Maryland Code in Article 88B, § 12A.

    [2]    The criminal docket for Maryland Judiciary Case Search shows that plaintiff was found guilty by a jury in the Circuit Court for Montgomery County, Maryland of one count of extortion by written threat and one count of extortion and was sentenced to ten years in the Maryland Division of Correction on January 11, 2006. *See State v. Rendelman*, Case Number 102679C.

Appx. 3.  DCD 20-9 establishes the policy and procedure for collection of the DNA sample from designated DOC inmates in cooperation with the Maryland State Police (copy attached). It is mandatory for designated inmates to provide a sample. Procedures are set in place should the inmate refuse to submit to the sample.[3]

The use of a DNA data base for law enforcement purposes is not new. In 1990 the Virginia legislature passed a law which requires convicted felons to submit blood samples for DNA analysis to determine identification characteristics and to provide for the creation of a data bank of the information for future law enforcement purposes. *See Jones v. Murray*, 962 F.2d 302, 303 (4th Cir. 1992). In *Jones*, the Fourth Circuit held that the Virginia law, comparable to the Maryland law addressed herein, was constitutional because such blood testing involved a minor intrusion in the individual's privacy rights when weighed with the government's interest in "[p]reserving a permanent identification record of convicted felons for resolving past and future crimes." *Id.* at 307-08. The *Jones* court agreed with the lower court finding that the DNA testing provisions were not punitive in nature, but represented an administrative tool to aid law enforcement practices.

The *Jones* court also held that prison administrators are not precluded from adopting reasonable regulations that are consistent with good prison administration and that for those who fail to comply with DNA testing; "[s]ubsequent punishments for infractions are contemplated as part of

---

[3]  The inmate is notified that if he refuses to be sampled: (a) the Maryland Parole Commission shall be notified; (b) he will not be considered for a a security reduction below medium security until the sample is given; (c) his classification to minimum or pre-release security will be increased by reclassification to medium security; and (d) he shall receive a notice of infraction which could result in the loss of visits, the revocation of all applicable diminution credits, and a period of disciplinary segregation. *See* DCD 20-9.VI.C.1. If the inmate refuses to provide a DNA sample: (a) the state person ordering the inmate to provide a sample shall write a notice of inmate rule violation; (b) a hearing officer will conduct a disciplinary hearing in accordance with established procedures; (c) the inmate shall be rescheduled by the Maryland State Police to give a DNA sample no sooner than 60 days form the date of refusal. If the inmate again refuses, staff shall use restraints and the minimum amount of necessary force, in accordance with DCD 110-23, to ensure that a DNA sample can be taken; and (d) the warden may elect to place an inmate on administrative segregation until a DNA sample is obtained. *See* DCD 20-9.VI.C.7.

the sentence of every prisoner,...they do not constitute additional punishment and are not classified as *ex post facto*." *Id.* at 309. A similar holding is found in *Ewell v. Murray*, 11 F.3d 482 (4th Cir. 1993). In *Ewell*, the Fourth Circuit held that the Virginia Department of Corrections did not violate the Constitution when it issued regulations which provided for the punishment, by the loss of good conduct credits, of a prisoner who refused to comply with a request to provide a blood sample for DNA testing purposes. *Id.* at 486-88.

Given the Fourth Circuit's holdings in *Jones* and *Ewell,* I find that the Maryland DNA testing policy does not violate plaintiffs' Fourth, Fifth, and Eighth Amendment rights. The test represents a permissible administrative policy for the development, maintenance, and operation of a statewide data bank to compile information on serious criminal offenders for future law enforcement purposes.

Plaintiff has not otherwise demonstrated a basis for bringing this claim in federal court, and thus his case will be dismissed. He is hereby notified that he may be barred from filing future suits in forma pauperis if he continues to file federal civil rights actions that are subject to dismissal for failure to state a claim on which relief may be granted under § 1915(e) or under Fed .R. Civ. P. 12(b)(6). A separate order effecting the rulings made in this memorandum is being entered herewith.


Date:   July 2, 2007                             /s/
                                                J. Frederick Motz
                                                United States District Judge